## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JASMINE CHATMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **No. 17 C 6032** |
| v. | ) | |
| | ) | **Chief Judge Rubén Castillo** |
| EITAN WELTMAN, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Jasmine Chatman ("Plaintiff") brings this action against Eitan Weltman ("Defendant") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a *et seq.* (R. 1, Compl.) Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, under Federal Rule of Civil Procedure 12(b)(6). (R. 13, Mot.) For the reasons set forth below, the motion is granted, and this action is dismissed for lack of subject-matter jurisdiction.

### BACKGROUND

Plaintiff is a resident of Illinois and a "consumer" within the meaning of the FDCPA. (R. 1, Compl. ¶ 6.) Defendant collects consumer debts owed to other entities and individuals. (*Id.* ¶¶ 7-8.) Plaintiff incurred a debt for back-due rent and fees, which due to her financial circumstances, she could not pay. (*Id.* ¶ 12.) After the debt went into default, the creditor retained Defendant to collect on the debt. (*Id.* ¶ 13.) Defendant then filed a lawsuit against Plaintiff in the Circuit Court of McLean County, Illinois, entitled *Young America Realty, Inc. v. Chatman*, 14 SC 1267 ("state court action"). (*Id.*) Defendant was ultimately awarded a default judgment against Plaintiff in the state court action. (*Id.* ¶ 14.) On or about August 19, 2016,

"Defendant obtained a warrant against Plaintiff for failure to make an appearance in court or to set up payment arrangements[.]"[1] (*Id.* ¶ 15.) Plaintiff claims that the warrant was "invalid" because, prior to its issuance, she was "not provided the opportunity to appear in court to show cause for why she should not be held in contempt" as required by Illinois law. (*Id.* ¶¶ 16-17 (citing 735 ILL. COMP. STAT. 5/12-107.5).) On or about August 22, 2016, Defendant sent a letter to Plaintiff referencing the debt and stating in pertinent part:

> Jasmine—it has been requested that a warrant issue for your arrest due to your failure to appear in court on August 19, 2016. Please contact this office regarding payment of the above balance.

(*Id.* ¶ 21; R. 1-1, Letter at 2.) After receiving this letter, Plaintiff obtained an attorney, who contacted Defendant to advise that the warrant was "improper." (R. 1, Compl. ¶¶ 22-23.) Defendant then had the warrant withdrawn on the basis that Plaintiff had "made arrangement for payment." (*Id.* ¶ 24; R. 1-2, Mot. to Recall Warrant at 4.) Plaintiff claims she nevertheless "experienced negative emotions" as a result of Defendant's actions, "including fear of answering the door, embarrassment when speaking with family or friends, feelings of hopelessness, pessimism, guilt, worthlessness, [and] helplessness[.]" (R. 1, Compl. ¶ 25.)

Based on these events, Plaintiff filed this action in August 2017.[2] (*See id.*) She asserts one count that has two parts: First, she claims that Defendant used "unfair and unconscionable means" to collect a debt in violation of 15 U.S.C. § 1692f when he obtained "an invalid warrant to arrest a consumer for the purposes of collecting a debt." (*Id.* ¶ 32.) Second, she claims that Defendant "used false, deceptive, or misleading representations" in violation of 15 U.S.C.

---

[1] Plaintiff alternately refers to the order issued by the state court as a "warrant" and "body attachment." (*See, e.g.,* R. 1, Compl. ¶¶ 15-16; R. 18, Resp. at 10.) The Court refers to it as a "warrant" in this opinion.

[2] This case was originally assigned to U.S. District Judge Samuel Der-Yeghiayan and was reassigned to this Court in March 2018 upon Judge Der-Yeghiayan's retirement. (R. 19, Executive Comm. Order.)

§ 1692e "when Defendant represented an invalid warrant as valid for the purposes of collecting on an alleged debt." (*Id.* ¶ 33.)

Defendant moves to dismiss under either Rule 12(b)(1) or Rule 12(b)(6). (R. 13, Mot.) Defendant first argues that Plaintiff lacks standing to pursue her claim because she obtained a discharge of her debts in bankruptcy in September 2017 and failed to schedule any claim against Defendant in her bankruptcy schedules. (R. 14, Mem. at 3-5.) Defendant further argues that, even if Plaintiff has standing, her claims are barred by the *Rooker-Feldman* doctrine because she is essentially "asking a lower federal Court to declare that the state court issued an order in violation of Illinois law."[3] (*Id.* at 5.) Alternatively, Defendant moves for dismissal under Rule 12(b)(6), arguing that Plaintiff cannot state a claim under the FDCPA based on the state court's issuance of a warrant, or based on Defendant notifying her of the state court's order. (*Id.* at 8-13.) Plaintiff objects to dismissal, arguing that she properly disclosed the claim in the bankruptcy case and that her claims are independent of the state court proceeding such that they are not barred by *Rooker-Feldman*. (R. 18, Resp. at 4-12.) She further argues that she has adequately stated claims for relief under the FDCPA based on the invalidity of the warrant. (*Id.* at 12-16.) The matter is now ripe for adjudication. (*See* R. 25, Reply.)

**LEGAL STANDARD**

A Rule 12(b)(1) motion tests whether the Court has subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1); *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). There are two types of challenges to

---

[3] The *Rooker-Feldman* doctrine arises from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), which "hold that the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014).

subject-matter jurisdiction: facial challenges and factual challenges. *Id.* A facial challenge "argues that the plaintiff has not sufficiently alleged a basis of subject matter jurisdiction." *Id.* (citation, internal quotation marks, and emphasis omitted). In deciding a facial challenge, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Id.* A factual challenge, on the other hand, argues that "there is *in fact* no subject matter jurisdiction, even if the pleadings are formally sufficient." *Id.* (citation and internal quotation marks omitted). In deciding a factual challenge, the Court can "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."[4] *Taylor*, 875 F.3d at 853 (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chi.*, 810 F.3d 476, 480-81 (7th Cir. 2016). The Court can consider the complaint itself, "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

---

[4] Defendant's challenge can be read as a factual challenge, as Defendant does not take issue with the jurisdictional allegations in the complaint, but instead argues that extraneous matters show that the Court lacks subject-matter jurisdiction. (R. 14, Mem. at 3-8.)

## ANALYSIS

Turning first to the Court's subject-matter jurisdiction, Defendant argues that subject-matter jurisdiction is lacking for two reasons: Plaintiff lacks standing, and she seeks relief that is barred by the *Rooker-Feldman* doctrine. (R. 14, Mem. at 3-8.) The Court addresses these arguments in turn.

### I.      Standing

Defendant first argues that Plaintiff lacks standing to pursue her claim against Defendant because she failed to disclose the claim in a bankruptcy case she filed in June 2017. (R. 13, Mem. at 3-4.) "Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute[.]" *Id.* (citation omitted). If standing is lacking, the case must be dismissed for lack of subject-matter jurisdiction. *Taylor*, 875 F.3d at 853. Plaintiff, as the party invoking the Court's subject-matter jurisdiction, bears the burden of establishing that she has standing. *Id.*

When a debtor files a bankruptcy petition, all of his or her property generally becomes property of the bankruptcy estate. *See* 11 U.S.C. §§ 541(a), 554(d). Such property includes all "legal and equitable interests" the debtor possesses "as of the commencement of the case." 11 U.S.C. § 541(a). This includes any legal claims arising prior to the filing of the bankruptcy petition. *In re Polis*, 217 F.3d 899, 901 (7th Cir. 2000). In other words, "pre-bankruptcy claims belong to the bankruptcy trustee, for the benefit of the debtor's creditors." *Nehmelman v. Penn Nat. Gaming, Inc.*, 790 F. Supp. 2d 787, 791 (N.D. Ill. 2011); *see also Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (observing that "the estate in bankruptcy, not the debtor, owns all pre-bankruptcy claims"). The trustee can decide to abandon a claim, thereby permitting the

5

debtor to pursue it in his or her own name, but this cannot occur if the debtor fails to disclose the claim. *See Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006); *Murphy v. FT Travel Mgmt., LLC*, No. 13-CV-4685, 2014 WL 1924045, at *2-3 (N.D. Ill. May 14, 2014).

Plaintiff's FDCPA claims are based on events occurring in August 2016, when the allegedly "invalid" warrant was issued and Defendant sent the letter to Plaintiff notifying her of the warrant. (R. 1, Compl. ¶¶ 15-17.) She filed her bankruptcy petition in June 2017 and obtained a discharge in September 2017. (R. 14-2, Bankruptcy Schedules at 1-45; R. 14-3, Discharge Order.) The question then becomes whether she properly disclosed the FDCPA claim in her bankruptcy case. *See Polis*, 217 F.3d at 902 (concluding that claim arising out of transaction occurring before bankruptcy petition was filed is considered part of the bankruptcy estate). Plaintiff argues that she did adequately disclose her claim, pointing to her bankruptcy schedules where she lists the following claim: "Jasmine Chatman v. Young America Realty, Inc. (FDCPA Case)," with an estimated value of $1,500. (R. 18, Resp. at 4-5; *see also* R. 14-2, Bankruptcy Schedules at 13.) Defendant counters that this was inadequate to alert the trustee to the claim she is pursuing here against *Defendant*, who is not the same as "Young America Realty, Inc."[5] (R. 25, Reply at 1-3.) The Court agrees with Plaintiff.

The purpose of the bankruptcy schedules is for the debtor to do "enough itemizing to enable the trustee to determine whether to investigate further." *Payne v. Wood*, 775 F.2d 202, 207 (7th Cir. 1985); *see also In re Furlong*, 660 F.3d 81, 87 (1st Cir. 2011) ("[G]enerally, an asset is adequately scheduled if its description exhibits reasonable particularization under the circumstances[.]" (citation and internal quotation marks omitted)); *Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001) (observing that description of an asset on bankruptcy schedules is

---

[5] Defendant acknowledges that he acted as counsel for Young America Realty, Inc., in the state court action. (R. 25, Reply at 2 n.1.)

adequate where the "listing was not so defective that it would forestall a proper investigation of the asset"). Plaintiff did that here, as she clearly identified the nature of her claim (an FDCPA case), the name of the state court case giving rise to her claim, and the approximate value of the claim. (R. 14-2, Bankruptcy Schedules at 13.)

She did identify the wrong defendant for her claim—Young American Realty, Inc., was the original creditor on the debt, and the FDCPA only governs the conduct of *debt collectors* not *creditors*. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("[T]he FDCPA . . . does not regulate creditors' activities at all."). But the U.S. Court of Appeals for the Seventh Circuit has held that "debtors who make innocent errors" on their bankruptcy schedules "should not be punished by loss of their choses in action when they turn the claims over to the Trustees." *Metrou v. M.A. Mortenson Co.*, 781 F.3d 357, 360 (7th Cir. 2015). There is nothing before the Court to suggest that Plaintiff purposely tried to hide this asset from the trustee. *Cf. Cannon-Stokes*, 453 F.3d at 448-49 (debtor who purposely omitted claim from her bankruptcy schedules on the advice of her attorney could not sue on that claim after bankruptcy case closed). As far as the record reveals, Plaintiff simply made an "innocent" error about who the proper defendant was in connection with her FDCPA claim. *Metrou*, 781 F.3d at 360; *see also Nielsen v. Dickerson*, No. 98 C 5909, 1999 WL 350649, at *5-6 (N.D. Ill. May 20, 1999) (rejecting defendant's argument that plaintiff's failure to disclose all potential defendants to FDCPA claim in her bankruptcy schedules meant that she had relinquished the claim as to a defendant not specifically listed). Plaintiff provided enough information for the trustee to investigate further and decide whether to pursue the claim on behalf of the estate. *See Payne*, 775 F.2d at 207; *Nielsen*, 1999 WL 350649, at *6. The fact that the trustee declined to do so before the bankruptcy case was closed means that the claim is effectively abandoned. *See* 11 U.S.C.

§ 554(c) ("[A]ny property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor[.]"). Therefore, the Court declines to dismiss for lack of standing.

## II.   *Rooker-Feldman* **Bar**

Defendant next argues that Plaintiff's complaint is barred by the *Rooker-Feldman* doctrine. (R. 14, Mem. at 5-8.) "The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017). "It ensures that lower federal courts do not exercise appellate authority over state courts." *Id.* "Claims that directly seek to set aside a state-court judgment are *de facto* appeals that trigger the doctrine." *Id.* "But even federal claims that were not raised in state court, or that do not on their face require review of a state court's decision, may be subject to *Rooker-Feldman* if those claims are closely enough related to a state-court judgment." *Id.* The Court must "ask whether the federal plaintiff is alleging that his injury was caused by the state-court judgment." *Id.* If so, the claim is barred. *Id.* If, however, "the claim alleges an injury independent of the state-court judgment that the state court failed to remedy, *Rooker-Feldman* does not apply." *Id.*

Applying those principles, it is apparent that Plaintiff's claims are barred by *Rooker-Feldman*. This case bears striking similarities to two recent cases where the Seventh Circuit held that the plaintiffs' claims were barred by *Rooker-Feldman*. *Mains*, 852 F.3d at 675-76; *Harold v. Steel*, 773 F.3d 884, 886-87 (7th Cir. 2014). In *Mains v. Citbank, N.A.*, the plaintiff brought a host of federal claims, including one under the FDCPA, related to a state court foreclosure action. 852 F.3d at 674. He argued that the plaintiff in the state case, a bank that had been

assigned his mortgage, "had committed fraud" in obtaining the judgment in state court, because it was not the real party in interest. *Id.* Cutting through the "verbiage" of the plaintiff's complaint, the Seventh Circuit concluded that the "foundation" of his federal suit was "his allegation that the state court's foreclosure judgment was in error because it rested on a fraud perpetrated by the defendants." *Id.* at 676. The court observed that the plaintiff "wants the federal courts to redress that wrong," but "[t]hat is precisely what *Rooker-Feldman* prohibits[.]" *Id.*

Similarly, in *Harold v. Steel*, the plaintiff filed a federal suit under the FDCPA stemming from a small claims judgment entered against him in state court. 773 F.3d at 885. He alleged that the plaintiff in the state case and the law firm representing it had violated the FDCPA by "misrepresent[ing] the judgment creditor's identity" in connection with a garnishment order that had been entered by the state court. *Id.* The Seventh Circuit held that this claim was barred because "the *Rooker-Feldman* doctrine applies when the state court's judgment is the *source* of the injury of which plaintiffs complain in federal court." *Id.* (emphasis added). The court rejected the plaintiff's attempts to argue that his claim was not barred because "the [defendant's] false statements, rather than the state court's decision, inflicted the injury of which he complains." *Id.* at 886. The court concluded that the doctrine applied because "[n]o injury occurred until the state judge ruled against [the plaintiff]." *Id.*

Here, Plaintiff claims that Defendant violated the FDCPA by obtaining an "invalid warrant" and then by sending her a letter "represent[ing] an invalid warrant as valid" in the course of executing on the state court judgment. (R. 1, Compl. ¶¶ 32-33.) It is true that Plaintiff does not explicitly seek to vacate the warrant issued by the state court or otherwise set aside the state court's default judgment, but both of her claims rest on a presumption that the warrant issued by the state court was "invalid" under state law. (R. 1, Compl. ¶¶ 32-33.) Under *Rooker-*

*Feldman*, the Court cannot make such a presumption, either explicitly or implicitly.[6] *See, e.g.,*

*Marienthal v. Asset Acceptance, LLC*, No. 1:14-CV-1636-WTL-DKL, 2016 WL 795902, at *4

(S.D. Ind. Mar. 1, 2016) (concluding that plaintiff's FDCPA claims premised on state

garnishment proceeding were barred by *Rooker-Feldman* because "proof of the Plaintiff's claims

based upon the garnishment order will require proof of the fact [of] its invalidity"); *Gonzales v.*

*Kohn Law Firm, S.C.*, No. 13-CV-168, 2015 WL 5794157, at *4 (E.D. Wis. Oct. 2, 2015)

(concluding that plaintiff's FDCPA case was barred by *Rooker-Feldman* because her "various

claims presuppose that the garnishment [order entered by the state court] was illegal"); *Leggett v.*

*Louis Capra & Assocs., LLC*, No. 13 C 05847, 2015 WL 1608662, at *6 (N.D. Ill. Apr. 10,

2015) (concluding that *Rooker-Feldman* barred plaintiff's discrimination claims arising from

state court eviction action even though plaintiff "is not seeking to vacate the judgment," because

"her alleged injuries . . . all flow" from the eviction order entered by the state court); *Kobilka v.*

*Cottonwood Fin. Wisc., LLC*, No. 14-CV-268-WMC, 2015 WL 1137471, at *3 (W.D. Wis. Mar.

12, 2015) (concluding that *Rooker-Feldman* barred the plaintiff's FDCPA claims arising from a

state court collection action even though plaintiff was "not attempting to challenge or otherwise

upend the state court judgment" because "this court cannot evaluate the relief plaintiff

requests . . . absent review of the state court's actions").

  It is true that the Seventh Circuit recently clarified that statements made by debt

collectors in the course of litigation are not exempted wholesale from the scope of the FDCPA.

*See Marquez v. Weinstein, Pinson & Riley*, 836 F.3d 808, 810 (7th Cir. 2016) (concluding that

---

[6] Plaintiff appears to concede as much when she states: "To the extent that Plaintiff complains about the impropriety of the body attachment, Plaintiff recognizes that this Court cannot review the propriety of that action." (R. 18, Resp. at 10.) Despite her attempts to argue in her response brief that her claims are independent of the state court action, (*id.* at 6-10), it is clear that both of her claims are premised on the impropriety of the warrant issued by the state court. (R. 1, Compl. ¶¶ 32-33.)

"pleadings or filings in court can fall within the FDCPA"). But that does not mean FDCPA plaintiffs are somehow excused from the *Rooker-Feldman* bar: The Court still must determine whether the specific claims raised or relief sought in a given FDCPA case runs afoul of *Rooker-Feldman. See Mains*, 852 F.3d at 676-77; *Harold*, 773 F.3d at 886-87. For the reasons explained above, the Court finds that the bar applies to Plaintiff's claims raised here.

Accordingly, this case must be dismissed without prejudice for lack of jurisdiction. *See Mains*, 852 F.3d at 678 ("The right disposition, when the *Rooker-Feldman* doctrine applies, is an order under [Rule 12(b)(1)] dismissing the suit for lack of subject-matter jurisdiction . . . . Such a dismissal cannot be with prejudice[.]" (citation and internal alteration omitted)). Because the Court lacks jurisdiction, it does not reach Defendant's alternative arguments that Plaintiff claims are legally deficient and should be dismissed with prejudice under Rule 12(b)(6). *See Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018) ("A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render." (citation omitted)).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (R. 13) is GRANTED, and this action is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

Dated: September 10, 2018

11